## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DANNY COLLINS,

        Plaintiff,

v.

CITIBANK, N.A.,

        Defendant.

No. 21-cv-00008

Judge John F. Kness

## MEMORANDUM OPINION & ORDER

After receiving numerous unsolicited calls from his credit card company, Plaintiff Danny Collins sued Defendant Citibank, N.A. for alleged violations of the Telephone Consumer Protection Act (TCPA). Defendant contends, however, that this case belongs in arbitration. According to Defendant, the parties' relationship is governed by a Card Agreement that provides for the arbitration of any claims "arising out of or related to [his] Account." Defendant has moved to compel arbitration and stay the case. (Dkt. 10.)

Along with his Response to Defendant's Motion to Compel, Plaintiff attached a declaration saying that he "never received the Card Agreement." Because Plaintiff's denial that he received the Card Agreement raises a genuine question of material fact as to whether the Card Agreement (and thus the arbitration provision) governs this dispute, *see Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002), the Court must resolve that question before it can determine the propriety of arbitration.

Accordingly, Defendant's motion to compel is denied without prejudice, and the parties are directed to proceed with limited discovery on the issue of whether Plaintiff received the Card Agreement.

## I. BACKGROUND

Plaintiff Danny Collins signed up for a Citibank MasterCard in April 2020. (Dkt. 11-1 ¶ 4.) Starting in July 2020, he began receiving prerecorded calls on his cellphone from Defendant Citibank, N.A. (Dkt. 1 ¶ 16.) In one call, for example, Defendant said,

> Thank you for being a part of the Citibank family. We know you're busy but if you could please just take a few minutes to log in at www.citicards.com to review your account status, it would be appreciated. If you prefer to call us, please feel free as it is always great to get a chance to speak to one of our valued clients. Our toll-free number is 1-800-388-2200. Once again, thanks for being a valued Citibank customer.

(*Id.* ¶ 17.) Despite Plaintiff's instruction to stop contacting him, Defendant continued sending prerecorded messages—as many as 48 times—between July and December 2020. (*Id.* ¶¶ 18–20.) Those calls resulted in a variety of harms to Plaintiff, including "invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion," and they "inconvenienced Plaintiff and caused disruption to her [*sic*] daily life." (*Id.* ¶ 24.) On January 4, 2021, Plaintiff filed this purported class action against Defendant for allegedly violating the TCPA, 47 U.S.C. § 227(b) (Count I), as well as regulations promulgated under the TCPA, 47 C.F.R. § 64.1200 (Count II). (*Id.* ¶¶ 36–54.)

Defendant asserts that the parties' relationship is governed by the Card Agreement and that contract requires this case to be arbitrated. (Dkt. 11 at 4-8; *see* Dkt. 11-2.) Indeed, it is undisputed that the Card Agreement provides that "[y]ou [Plaintiff] or we [Defendant] may arbitrate any claim, dispute or controversy arising out of or related to your Account, a previous Account or our relationship (called 'Claims')." (Dkt. 11-2 at 15.) Based on the Card Agreement, Defendant has moved to compel arbitration and to stay the case during the pendency of arbitration. (Dkt. 10.) So far, so good—except that Plaintiff contends that he never actually received the Card Agreement when he signed up for his credit card. (*Compare* Dkt. 16-1 ¶ 7 ("Citibank's records reflect that, on April 20, 2020, Plaintiff confirmed receipt of his credit card, which was accompanied by the Card Agreement.") *with* Dkt. 14-1 ¶ 5 ("I never received the Card Agreement that Citibank claims to have mailed me.").) Plaintiff argues that, because he never received the Card Agreement, he cannot be bound to its terms.

## II.    STANDARD OF REVIEW

The Federal Arbitration Act (FAA) "reflects both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Under the FAA, arbitration agreements " 'shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) (quoting 9 U.S.C. § 2). A court should grant a motion to compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4).

Generally, "[t]he judiciary rather than an arbitrator decides whether a contract came into being." *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001). This reflects the basic precept that arbitration "is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (internal quotation omitted). When deciding whether to enforce an agreement to arbitrate or interpret an arbitration clause, a court must "give effect to the contractual rights and expectations of the parties." *Id.* at 682. Accordingly, as with any other contract, the parties' intent controls. *Sphere*, 256 F.3d at 591 ("[A]s arbitration depends on a valid contract[,] an argument that the contract does not exist can't logically be resolved by the arbitrator.").

It is the burden of the party seeking to compel arbitration to show an agreement to arbitrate. 9 U.S.C. § 4; *see A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). Once the party seeking to compel has shown such an agreement, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder*, 305 F.3d at 735. The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id.*

"[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* As with summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws reasonable inferences in its favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." *Id.* (quoting 9 U.S.C. § 4).

## III.    DISCUSSION

Defendant argues that "Plaintiff's credit card account is subject to written arbitration agreements contained in the terms and conditions governing the accounts." (Dkt. 11 at 1.) Under the Card Agreement, either party "may arbitrate any claim, dispute or controversy between you [Plaintiff] and us [Defendant] arising out of or related to your Account, a previous related Account or our relationship" and that, "[i]f arbitration is chosen by any party, neither [party] will have the right to litigate that Claim in court or have a jury trial on that Claim." (*Id.* at 3; Dkt. 11-2 at 15.)

Plaintiff argues that he should not be bound by the terms of the Card Agreement because he did not receive it. (Dkt. 14 at 3; Dkt. 14-1 ¶ 5.) In general, evidence of a proper mailing "raises a rebuttable presumption of delivery." *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009); *see Vincent v. City Colls. of Chi.*, 485 F.3d 919, 922 (7th Cir. 2007) ("Evidence of mailing is evidence of delivery."). With its motion, Defendant includes a declaration of Kelly Booth, an

5

employee of Citibank who explains that "a copy of the Card Agreement [with the arbitration clause] . . . was mailed to the Plaintiff when Plaintiff opened the Account." (Dkt. 11-1 ¶¶ 1, 6; *see also id.* at ¶ 8 ("Citibank's records confirm that Plaintiff received the Card Agreement mailing but did not choose to reject the arbitration agreement.").) In a second declaration attached to Defendant's Reply, Booth elaborates on Defendant's "standard mailing process," which includes sending "the Card Agreement along with the actual credit card to customers." (Dkt. 16-1 ¶ 6.) Booth also reports "that, on April 20, 2020, Plaintiff confirmed receipt of his credit card, which was accompanied by the Card Agreement," and she attaches with her declaration "a copy of the printout of the computer records for Plaintiff's Account reflecting Plaintiff's confirmation of receipt of his credit card." (*Id.* ¶ 7; *see* Dkt. 16-3.) Without evidence to the contrary, Booth's explanation of Defendant's mailing practices and her confirmation that the Card Agreement was mailed to Plaintiff is enough for the Court to "reasonably infer that [Plaintiff] did" receive the agreement. *Anderson v. Larry*, No. 21-CV-944, 2021 WL 5957420, at *8 (N.D. Ill. Dec. 16, 2021).

But Plaintiff's statement to the contrary complicates the analysis. In a declaration accompanying his Response, Plaintiff swears that he "never received the Card Agreement that Citibank claims to have mailed [him]." (Dkt. 14-1 ¶ 5.) As explained by another judge in this District, if a plaintiff "*denie[s]* receiving [a] letter, his sworn denial would rebut the presumption [of delivery] for summary judgment purposes and create a factual dispute that the jury would need to resolve." *Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 715 (N.D. Ill. 2017);

see *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 459 (7th Cir. 1988) ("[D]enial of receipt alone does not rebut the presumption, but merely creates a question of fact."). Plaintiff's sworn denial thus raises a genuine dispute such that the Court cannot compel arbitration at this time.

Defendant cites to *Tinder*, 305 F.3d at 735-36 and *Jones v. Financial Recovery Services Inc.*, No. 20 C 2843, 2020 WL 6255475, at *3 (N.D. Ill. October 23, 2020), to support its contention that no triable issue of facts exists (Dkt. 16 at 3). But the plaintiff in *Tinder* asserted merely that "she [did] not remember receiving or seeing the brochure." *Tinder*, 305 F.3d at 736. And, in *Jones*, the plaintiff denied receiving a 2018 credit card agreement but did *not* deny receiving the similar 2016 agreement at issue in that case. *Jones*, 2020 WL 6255475, at *3. In this case, by contrast, Plaintiff's position is not that he lacks memory of receipt (as in *Tinder*) or that he did not receive a different version of the Card Agreement (as in *Jones*); Plaintiff's sworn statement is that he "never received" the Card Agreement upon which Defendant bases its motion to compel. (Dkt. 14-1 ¶ 5.)

At present, the question of whether (and, if so, how) Plaintiff received the Card Agreement is factually undeveloped. It is possible that discovery will shed light on that issue. In *Kostovetsky*, for example, the plaintiff testified in his deposition that he did not "remember receiving th[e] letter." *Kostovetsky*, 242 F. Supp. 3d at 715. On that basis, and in conjunction with evidence supplied by the defendant, the court found that the plaintiff did receive the letter. *Id.* at 716. As explained in *Kostovetsky*, "[u]nlike an outright denial, [the plaintiff's] lack of recollection cannot rebut the

7

presumption that he received the letter, and so there is no genuine factual dispute." *Id.* at 715; *see also*, *e.g.*, *Pohlman v. NCR Corp.*, No. 12 CV 6731, 2013 WL 3776965, at *5 (N.D. Ill. July 17, 2013) ("[E]vidence before [the court] following discovery support[ed] the conclusion that [the defendant] mailed the brochure and letter . . . to the address where [the plaintiff] was receiving mail.").

To develop the record on whether Plaintiff received the Card Agreement, which may demonstrate that arbitration is required in this case, the parties should engage in discovery limited, for the time being at least, to that issue. *See Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994) ("District judges have substantial discretion to make such decisions to curtail the expense and intrusiveness of discovery and trial." (citing *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993))). Once the factual record is more fully developed, the Court can assess, in consultation with the parties, how next to proceed with the case.

## IV. CONCLUSION

Based on the current record, and drawing all inferences in Plaintiff's favor, *see Tinder*, 305 F.3d at 735, there is a genuine dispute as to whether Plaintiff received the Card Agreement. Because that dispute must be addressed before the Court can assess the parties' other arguments—including which state's laws govern this dispute, whether the Card Agreement's arbitration provision is substantively or procedurally unconscionable, and whether the Card Agreement's application in this case is unconstitutional—Defendant's motion to compel is denied without prejudice.

The parties are ordered to meet and confer about how to conduct limited discovery on the issue of whether Plaintiff received the Card Agreement. Discovery is stayed in all other respects. *Cf. Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005) ("We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to *stay* the proceedings pending arbitration rather than to dismiss outright.").

SO ORDERED in No. 21-cv-00008.

Date: March 8, 2022

JOHN F. KNESS
United States District Judge